Kevin Mahoney (SBN: 235367)
kmahoney@mahoney-law.net
Katherine Odenbreit (SBN: 184619)
kodenbreit@mahoney-law.net
John A. Young (SBN: 299809)
jyoung@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 E. Ocean Boulevard, Suite 814
Long Beach, CA 90802
Telephone No.: (562) 590-5550
Facsimile No.: (562) 590-8400

Attorneys for Plaintiff ANITA TREJO, as an individual and on behalf of all similarly situated employees

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA TREJO,<br><br>    Plaintiff,<br><br>    v.<br><br>LYNEER STAFFING SOLUTIONS, LLC; CIERA STAFFING, LLC; EMPLOYERS HR LLC; YUSEN LOGISTICS (AMERICAS) INC.; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No.: 2:19-cv-4132-DSF (JCx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Assigned to;<br>Hon. Dale S. Fischer, Courtroom 7D<br><br>Date:        June 6, 2022<br>Time:      1:30 p.m.<br>Courtroom:  7D<br><br>Complaint Filed:  March 27, 2019 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 6, 2022, at the United States District Court for the Central District of California located at 350 W. 1st Street, Courtroom 7D, Los Angeles, California, Plaintiff Anita Trejo ("Plaintiff"), individually, and on behalf of those similarly situated will, and hereby does move this Court, pursuant to the Federal Rules of Civil Procedure, Rule 23(e), for an order granting final approval of the class action settlement between Plaintiff and Defendants Lyneer Staffing Solutions, LLC, Ciera Staffing, LLC, Employers HR, LLC, and Yusen Logistics (Americas), Inc. (collectively referred to herein as "Defendants") (Plaintiff and Defendants are referred to collectively as the "Parties"), memorialized in the Parties' Joint Stipulation for Class Action Settlement and Release and Addendum ("Settlement Agreement"), and preliminarily approved by this Court on June 15, 2021. (Dkt. No. 61.)

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Katherine J. Odenbreit in Support of the Motion; (4) the Declaration of Taylor Mitzner of Phoenix Settlement Administrators; (5) the Parties' Settlement Agreement; (6) the Notice of Class Action Settlement; (7) the [Proposed] Order Granting Final Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this Action; and (9) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated: March 4, 2022        **MAHONEY LAW GROUP, APC**

By:   */s/Katherine J. Odenbreit*
Katherine J. Odenbreit, Esq.
Attorneys for Plaintiff Anita Trejo, as an
individual and on behalf of all similarly
situated employees

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...........................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................2

  A.   The Parties ...............................................................................................2

  B.   The Class and Representative Action........................................................3

  C.   Mediation and Settlement .........................................................................4

  D.   Significant Discovery and Investigation Informally Conducted by the Parties
       4

  E.   Preliminary Approval of the Settlement....................................................6

III.    SUMMARY OF SETTLEMENT TERMS ...................................................6

  A.   Monetary Terms ........................................................................................6

  B.   The Settlement Class and Class Period .....................................................7

  C.   The Settlement Distribution Formula........................................................8

  D.   The Class Release .....................................................................................9

IV.    THE NOTICE PROCESS ..........................................................................10

V.    SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND
       ADEQUATE................................................................................................11

  A.   Legal Standards .......................................................................................11

  B.   Final Confirmation of Class Certification is Appropriate.............................14

  C.   Final Settlement Approval is Appropriate as the Settlement Agreement is
       Fair, Reasonable, and Adequate ..............................................................15

      1.   The Settlement is the Product of Arms' Length Negotiations....................15

      2.   The Costs and Risks of Further Litigation Favor Approval of the
           Settlement ........................................................................................16

      3.   The Amount of the Settlement Favors Approval .......................................18

      4.   The Settlement Provides for Equal Treatment of Class Members..............20

      5.   The Absence of Any Class Member Objection to the Settlement Agreement
           Supports Final Approval....................................................................21

      6.   Additional Rule 23(e) Factors ................................................................22

VI.    CONCLUSION ..........................................................................................22

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aftermarket Automotive Lighting Products Antitrust Litigation*
10, 2014, No. 09 MDL 2007-GW(PJWX)),
  2014 WL 12591624........................................................................ 28

*Altamirano v. Shaw Industries, Inc.*,
  (N.D. Cal., July 24, 2015, No. 13-CV-00939-HSG) 2015 WL 4512372 ............ 27

*Atlas v. Accredited Home Lenders Holding Co.*
4, 2009, No. 07-CV-00488-H (CAB)),
  2009 WL 3698393........................................................................ 28

*Balderas v. Massage Envy Franchising, LLC*,
  (N.D. Cal., July 21, 2014, No. 12-CV-06327 NC) 2014 WL 3610945 .............. 26

*Behrens v. Wometco Enterprises, Inc.*,
  (S.D. Fla. 1988) 118 F.R.D. 534 ................................................... 26

*Boyd v. Bechtel Corp.*,
  (N.D. Cal. 1979) 485 F.Supp. 610 ................................................. 29

*Chun-Hoon v. McKee Foods Corp.*,
  (N.D. Cal. 2010) 716 F.Supp.2d 848 .............................................. 28

*Churchill Village, L.L.C. v. General Electric*,
  (9th Cir. 2004) 361 F.3d 566....................................................... 8, 19

*City of Detroit v. Grinnell Corp.*,
  (S.D.N.Y. 1972) 356 F.Supp. 1380.................................................. 26

*City of Detroit*,
  495 F.2d....................................................................................... 27

*Ellis v. Naval Air Rework Facility*,
  (N.D. Cal. 1980) 87 F.R.D. 15 ...................................................... 29

*Greko v. Diesel U.S.A., Inc.*,
  (N.D. Cal., Apr. 26, 2013, No. 10-CV-02576 NC) 2013 WL 1789602 ............. 24

*Hanlon v. Chrysler Corp.*,
  (9th Cir. 1998) 150 F.3d 1011 ........................................................ 9, 19, 20, 21, 30

*Harris v. Vector Marketing Corp.*,
  (N.D. Cal., Apr. 29, 2011, No. C-08-5198 EMC) 2011 WL 1627973 ............... 22

*In re Bluetooth Headset Products Liability Litigation*,
  (9th Cir. 2011) 654 F.3d 935 .......................................................... 19, 22

*In re Pacific Enterprises Securities Litigation*,
  (9th Cir. 1995) 47 F.3d 373 ................................................................ 29

*In re Zynga Inc. Securities Litigation*,
  (N.D. Cal., Oct. 27, 2015, No. 12-CV-04007-JSC) 2015 WL 6471171 ............. 22

*International Union of Operating Engineers-Employers Const. Industry Pension,
  Welfare and Training Trust Funds v. Karr*,
(9th Cir. 1993) 994 F.2d 1426 .................................................................... 15

*Lazarin v. Pro Unlimited, Inc.*,
  (N.D. Cal., July 11, 2013, No. C11-03609 HRL) 2013 WL 3541217 ................. 16

*Linney v. Cellular Alaska Partnership*,
  (9th Cir. 1998) 151 F.3d 1234 ................................................................ 26

*Ma v. Covidien Holding, Inc.*,
  (C.D. Cal., Jan. 31, 2014, No. SACV 12-02161-DOC) 2014 WL 360196 ........ 26

*Mandujano v. Basic Vegetable Products, Inc.*,
  (9th Cir. 1976) 541 F.2d 832 ................................................................ 28

*Mora v. Harley-Davidson Credit Corp.*,
  (E.D. Cal., Jan. 3, 2014, No. 1:08-CV-01453-BAM) 2014 WL 29743 .............. 24

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
  (C.D. Cal. 2004) 221 F.R.D. 523 ..................................................... 18, 28

TABLE OF CONTENTS AND AUTHORITIES

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
   (9th Cir. 1982) 688 F.2d 615............................................................ 19, 20, 25, 26

*Rodriguez v. West Publishing Corp.*,
   (9th Cir. 2009) 563 F.3d 948.................................................................. 22, 29

*Staton v. Boeing Co.*,
   (9th Cir. 2003) 327 F.3d 938......................................................................... 18

*Thieriot v. Celtic Ins. Co.*,
   2011 WL 1522385 (N.D. Cal. April 21, 2011)................................................ 24

*Vasquez v. Packaging Corporation of America*,
   (C.D. Cal., Aug. 17, 2020, No. CV191935PSGPLAX) 2020 WL 6785650 ....... 16

*Velazquez v. International Marine and Industrial Applicators, LLC*
9, 2018, No. 16CV494-MMA (NLS)),
   2018 WL 828199.......................................................................................... 23

Statutes

28 U.S.C. section 1442(a)(1) ............................................................................ 9

28 U.S.C. sections 1331 and 1441 (a)................................................................ 9

28 U.S.C.A.(a) and 23(b)(3) ............................................................................. 8

29 U.S.C.A. sections 206 to 207 ...................................................................... 9

California Business & Professions Code Sections 17200 ....................................... 15

Rules

Federal Rule of Civil Procedure 23, subdivision (a) ............................................ 11

Federal Rule of Civil Procedure 23, subdivision (b)(3) ........................................ 11

Federal Rules of Civil Procedure, rule 23............................................. 8, 18, 20, 21

Federal Rules of Civil Procedure, Rule 23(e)...................................................Passim

Rule 23(a) and Rule 23(b)(3) ........................................................................ 21

Rule 23(e)(2) ......................................................................................... 19, 20

Rule 23(e)(3) ................................................................................. 19, 20

Rule 23, subdivision (e) of the Federal Rules of Civil Procedure ..................... 7, 30

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Anita Trejo ("Plaintiff") submits this memorandum in support of his unopposed Motion for Final Approval of Class Action Settlement ("Motion"). The proposed settlement reached by Plaintiff and Defendants Lyneer Staffing Solutions, LLC, Ciera Staffing, LLC, Employers HR, LLC, and Yusen Logistics (Americas), Inc. (collectively referred to herein as "Defendants") (Plaintiff and Defendants are referred to collectively as the "Parties"), as memorialized in the Parties' Joint Stipulation for Class Action Settlement and Release and Addendum ("Settlement Agreement"), is fair, adequate, and reasonable, and thus warrant final approval, for the reasons provided herein.

## I.   INTRODUCTION

The Parties[1] hereto have reached a settlement in this matter, which is subject to the final approval of this Court. Plaintiff requests that the Court grant final approval of the Parties' Settlement Agreement, pursuant to Rule 23, subdivision (e) of the Federal Rules of Civil Procedure. The non-reversionary settlement amount of six hundred twenty-six thousand seven hundred five dollars and forty-five cents ($626,705.45) is "fair, reasonable, and adequate" within the meaning of Rule 23(e). The Class includes two thousand five hundred sixty-one (2,561) Class Members, comprised of all non-exempt, hourly workers who were assigned by Lyneer Staffing Solutions, LLC, Ciera Staffing, LLC, and Employers HR, LLC to perform work for Yusen Logistics (America), Inc. in California at any time from July 1, 2017 through and including August 25, 2019 ("Class Member(s)" or "Settlement Class Member(s)") and (the "Class Period"). Class Members stand to recover substantial and immediate monetary benefits under the settlement with an average estimated Gross Recovery of one hundred forty-one

---

[1] All capitalized terms appearing in this Memorandum that are not defined herein have the same meanings assigned to them as provided in the Parties' Settlement Agreement. (Odenbreit Dec., Ex. A)

dollars and thirty-one cents ($141.31) per Settlement Class Member. (Declaration of Taylor Mitzner ("Mitzner Dec."), ¶14.)

The settlement is in line with the strength of Class Members' claims given the risk, expense, complexity, and likely duration of further litigation, including the risks of establishing liability, proving damages at trial and on appeal, and the risks of securing and maintaining class action status throughout the trial and on appeal. (*See Churchill Village, L.L.C. v. General Electric* (9th Cir. 2004) 361 F.3d 566, 575–76 (citing *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026). It is uncertain whether Plaintiff would have ultimately been able to certify and maintain the case as a class action, and to have prevailed on liability for the Class through summary judgment, at trial, and on appeal. Weighing the risks, time, and expense of continued litigation against the substantial benefits afforded now by the proposed settlement, Class Counsel represents that the proposed settlement is in the best interest of the Class.

In connection with requesting final settlement approval, Plaintiff also requests that the Court: (1) confirm as final the certification of the Class under Federal Rules of Civil Procedure, rule 23, 28 U.S.C.A.(a) and 23(b)(3); (2) confirm as final the appointment of Plaintiff as the class representative of the Class; and (3) enter the proposed final approval order and enter judgment. Plaintiff also requests the Court award Class Counsel's requested attorney's fees and costs in a separate motion filed concurrently herewith. Finally, while the settlement is not contingent upon any service payment, Plaintiff requests the Court award a service payment to compensate Plaintiff for his service to and risks taken on behalf of the Class, as provided on a separate motion filed concurrently herewith.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Defendant LYNEER STAFFING SOLUTIONS, LLC is a Delaware

business entity, which is registered and conducting business in the State of California and provides temporary staffing services throughout California. Defendant CIERA STAFFING, LLC is a Delaware business entity, which was registered and conducted business in the State of California and provides temporary staffing services throughout California.  Defendant EMPLOYERS HR LLC is a Florida business entity, which is registered and conducting business in the State of California and provides temporary staffing and/or payroll services throughout California.  Defendant YUSEN LOGISTICS (AMERICAS) INC. is a New York corporation, which is registered and conducting business in the State of California and provides third party logistics services throughout California.

Plaintiff and the Class Members were all non-exempt, hourly workers who were assigned by Lyneer Staffing Solutions, LLC, Ciera Staffing, LLC, and Employers HR, LLC to perform work for Yusen Logistics (America), Inc. in California at any time from July 1, 2017 through and including August 25, 2019.

**B.    The Class and Representative Action**

On March 27, 2019, Plaintiff, a former employee of Defendants, filed the Class Action in the Superior Court of California for the County of Los Angeles as a proposed class action on behalf of all current and former non-exempt California employees of Defendants, during the period of March 27, 2019 through the date of final judgment. Plaintiff alleged that Defendants (1) failed to pay all wages, including minimum wages and overtime wages; (2) failed to provide accurate itemized wage statements; (3) failed to pay wages upon termination of employment; and (4) engaged in unfair business practices. Plaintiff sought recovery under the California Labor Code, the applicable Industrial Welfare Commission Wage Order, and the California Business & Professions Code. On May 13, 2019 Defendant Yusen Logistics (Americas), Inc. filed a notice of removal, removing the lawsuit titled *Anita Trejo v. Lyneer Staffing Solutions, LLC, Ciera Staffing, LLC, Employers HR, LLC, and Yusen Logistics (Americas),*

*Inc.* Case No. 19STCV10411 to the United States District Court for the Central District of California pursuant to 1332(d), 1367(a), 1441(a), 1441(b), 1446, and 1453. On May 30, 2020, Plaintiff filed the PAGA Action in the Superior Court of California for the County of Los Angeles Private Attorneys General Act ("PAGA"). Defendants deny all of the allegations in the complaint and the theories of liability upon which this case was asserted. Defendants asserted affirmative defenses to each of the causes of action asserted therein"). (Declaration of Katherine J. Odenbreit ("Odenbreit Dec.") ¶ 4.)

### C. Mediation and Settlement

On August 26, 2020, the Parties engaged in private mediation with mediator Steve Serratore, a mediator highly-experienced in the type of wage and hour allegations brought in this matter by Plaintiff. While the case did not settle at mediation on August 26, 2020, the Parties continued with good faith arm-length settlement negotiations through Mr. Serratore and ultimately the Parties reached an agreement and memorialized the agreement in a Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement" or "Agreement") that was fully executed on April 22, 2021. Following the Court's June 1, 2021, Order to correct the references to exhibits delineated in the Amended Proposed Order and address the amount of time class members have to object to any award of fees and costs, the Parties entered into a subsequent Joint Stipulation of Class Action Settlement and Release with the Addendum and Amended Class Notice amended pursuant to the Court's order. At all times, the negotiations leading to the Settlement Agreement have been adversarial, non-collusive, and at arm's length. (Odenbreit Dec. ¶ 11.)

### D. Significant Discovery and Investigation Informally Conducted by the Parties

The Parties engaged in formal and informal discovery as a means of minimizing litigation costs, as well as fostering a cooperative dynamic ahead of

the substantive negotiations. Over the course of the litigation, Class Counsel conducted extensive investigation into the claims asserted in this case.  That investigation included the review, analysis and sampling of numerous records and other documents, and research and evaluation of claims and defenses.  Plaintiff secured information and documentation concerning the claims set forth in the litigation, such as Defendants' policies and procedures regarding the payment of wages, meal and rest breaks, as well as information regarding the number of putative class members and the mix of current versus former employees, Defendants' written policies and handbook, the wage rates in effect, and length of employment for the average putative class member.  In turn, Plaintiff retained her own expert to review and analyze these records to further Plaintiff's evaluation of the Plaintiff's class and PAGA claims and evaluation of settlement value. (Odenbreit Dec. ¶ 5.)

Using the above information and records, Plaintiff and her counsel were able to reasonably assess liability on the part of Defendant and the resulting value of damages, paving the way for the proposed settlement terms. (Odenbreit Dec. ¶ 6.)  Accordingly, Plaintiff and her counsel determined that the agreed-upon initial sum of four hundred eighty thousand dollars ($480,000.00) was a reasonable and appropriate gross settlement value for this instant action. The Parties contemplated a potential increase in Class Members and to account for the potential increase and ensure this settlement was reasonable the Parties agreed to an Elevator Clause in the Settlement Agreement (¶1.20) wherein the Gross Settlement Amount ("GSA") has increased to six hundred twenty-six thousand seven hundred five dollars and forty-five cents ($626,705.45) to account for the increase in class size.  Wherein the class size did increase from two thousand sixty-one (2,061) to two thousand five hundred sixty-one (2,561) Class Members. Wherein the number of work weeks did increase from nineteen thousand nine hundred forty-two (19,942) to twenty-six thousand thirty-seven (26,037).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Accordingly, based on the contemplated increase in class size and or work weeks and the corresponding increase in the GSA, Class Counsel maintains that this settlement is fair, adequate, and reasonable (Odenbreit Dec. ¶¶ 14-15.)

### E.    Preliminary Approval of the Settlement

On June 15, 2021, following supplemental briefings and a telephonic hearing, the Court granted the unopposed Motion for Preliminary Approval of the Class Action Settlement. (Dkt. No. 61.) Therein, the Court determined that the Settlement Agreement is "fair, just, and reasonable and, therefore, meet the requirements for preliminary approval . . ." (Dkt. No. 61.) The Court further found that, 'for settlement purposes only, the requirements of Federal Rule of Civil Procedure 23, subdivision (a) and Federal Rule of Civil Procedure 23, subdivision (b)(3) are satisfied. (Dkt. No. 61.) The Court conditionally certified, for settlement purposes only, a "Class" consisting of the following:

> [A]ll non-exempt, hourly workers who were assigned by Lyneer Staffing Solutions, LLC, Ciera Staffing, LLC, and Employers HR, LLC to perform work for Yusen Logistics (Americas), Inc. in California at any time from July 1, 2017 to August 25, 2019 (the "Class Period"). (Dkt. No. 61.)

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    Monetary Terms

In consideration for the releases of all claims at issue, Defendants agree to pay six hundred twenty-six thousand seven hundred five dollars and forty-five cents ($626,705.45) (the "Gross Settlement Amount"), excluding Defendants' side of payroll taxes (which Defendants will pay separately), as a full and complete settlement of all claims arising from the action by the Class. The Gross Settlement Amount shall be allocated as follows:

> (1)    Settlement administration costs to Phoenix Class Action Administrators shall not to exceed fifteen thousand dollars ($15,000.00) (Odenbreit Dec., ¶ 12, Ex. A, section 1.3; Mitzner Dec., ¶ 16, Ex. C.);

(2)    A requested one-third or thirty-three and one-third percent (33.33%) of the Gross Settlement Amount or two hundred eight thousand nine hundred one dollars and eighty-two cents ($208,901.82), and Class Counsel originally estimated the litigation costs to be sixteen thousand dollars ($16,000.00). Attorneys' actual costs in the amount of thirteen thousand three hundred ninety-nine dollars and ninety-one cents ($13,399.91) are requested by Class Counsel to be paid from the GSA. The remaining amount of two thousand six hundred dollars and nine cents ($2,600.09) will become part of the Net Settlement Fund for distribution to Settlement Class Members;

(3)    A requested Enhancement Payment for Plaintiff as Class Representative in the amount of seven thousand five hundred dollars ($7,500.00);

(4)    Twenty thousand dollars ($20,000.00) from the Gross Settlement Amount allocated to the settlement of claims brought under the PAGA, of which a payment of seventy five percent (75%) or fifteen thousand dollars ($15,000) will be made to the LWDA for enforcement of labor laws and education of employers. The remaining twenty five percent (25%) or five thousand five hundred dollars ($2,500) will be distributed to PAGA Members in accordance with the terms of the Settlement.

The Parties further agreed that the Gross Settlement Amount is non-reversionary. As such, one hundred percent (100%) the Net Settlement Amount will be paid to Settlement Class Members without the need to submit a claim.

## B.    The Settlement Class and Class Period

The Settlement contemplates a Class certified for settlement purposes

comprising of "[A]ll non-exempt, hourly workers who were assigned by Lyneer Staffing Solutions, LLC, Ciera Staffing, LLC, and Employers HR, LLC to perform work for Yusen Logistics (Americas), Inc. in California at any time from July 1, 2017 to August 25, 2019. The Court granted preliminary approval of the Settlement, including the definition of the Class and Class Period as defined herein, on June 15, 2021. (Dkt. No. 61.)

### C.     The Settlement Distribution Formula

The Net Settlement Amount shall be apportioned among Settlement Class Members based on each of their respective number of Compensable Work Weeks worked during the Class Period. Defendants will calculate the Compensable Work Weeks for each Settlement Class Member. The Settlement Administrator will calculate a Payment Ratio from the Net Settlement Amount for each Settlement Class Member by dividing the respective Compensable Work Weeks by the total Compensable Work Weeks for all Settlement Class Members. Each Settlement Class Member's Payment Ratio will then be multiplied by the Net Settlement Amount to determine each Individual Settlement Payment. (Odenbreit Dec., Ex. A, sections 1.10 and 3.21-3.22.)

Based on the estimated Net Settlement Amount of three hundred sixty-four thousand three hundred three dollars and sixty-three cents ($366,903.72) the average will be one hundred forty-one dollars and thirty-one cents ($141.31). (Mitzner Dec., ¶ 14.) This recovery on behalf of Class Members is well in excess of amounts that have been approved on the low end of the range of wage and hour settlements in California state and federal courts. (*See, e.g., Sorenson v. PetSmart, Inc.,* No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); *Gomez v. Amadeus Salon, Inc.*, No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20); *Delgado v. New Albertson's, Inc.*, No. SACV08-806 DOC-RBNx (CD. Cal.) (average net recovery of approximately $45.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

### D.    The Class Release

As of the full funding of the Gross Settlement Fund, each Participating Class Member, on behalf of himself or herself and his or her heirs and assigns, releases Defendants from the following claims for the entire Class Period: all claims in the Actions, as well as any and all claims (known or unknown) that were asserted or could have been asserted based on the facts pled in the Actions (including those alleged in Plaintiff's Letters to the LWDA), or that arise out of the Actions, including, without limitation, claims that Defendants failed to provide meal periods; failed to provide rest periods; failed to pay hourly wages; rounded time entries to deprive Class Members of wages; required Class Members to work "off the clock"; required Class Members to arrive to work early without compensation; failed to pay minimum wage; failed to pay overtime compensation; failed to provide accurate itemized wage statements; and failed to pay all wages due to discharged and quitting employees. The released claims include but are not limited to claims brought under California Labor Code sections 201-203, 204, 226, 226.7, 510, 512, 1174, 1174.5, 1194, 1197, 2698 *et seq.*, the applicable IWC Wage Order, and Section 17200 of the California Business and Professions Code. Such claims include claims for wages, statutory penalties, civil penalties, or other relief under the California Labor Code and any other related state or municipal law, relief from unfair competition under California Business and Professions Code section 17200 *et seq.*; attorneys' fees and costs; and interest, and waives the protection of California Civil Code section 1542 with respect to such claims. (Odenbreit Dec., Ex. A, section 1.35.)

The releases provided in the Settlement Agreement are directly related to Plaintiff's claims and are therefore appropriate. *See International Union of Operating Engineers-Employers Canst. International Union of Operating Engineers-Employers Const. Industry Pension, Welfare and Training Trust Funds v. Karr* (9th Cir. 1993) 994 F.2d 1426, 1430 ("res judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in

the prior action").

## IV.    THE NOTICE PROCESS

### A.    Notification to the Class

On June 15, 2021, the Court appointed Phoenix Class Action Administrators ("Phoenix") as the Settlement Administrator pursuant to the terms of the Settlement Agreement and carry out the Settlement according to the terms of the Settlement Agreement. (Dkt. No. 61.) February 4, 2022, Phoenix mailed the Notice Packet via U.S. first class mail to all 2,561 Class Members on the Class List. (Mitzner Dec., ¶ 6, Ex. A.)

As of March 4, 2022, one hundred fifty-five (155) Notice Packets have been returned to Phoenix. (Mitzner Dec., ¶ 7.) One (1) Notice Packet was returned with a forwarding address and promptly re-mailed. (Mitzner Dec., ¶ 7.) For the one hundred fifty-four (154) Notice Packets returned without a forwarding address, Phoenix attempted to locate a current mailing address using TransUnion TLOxp, one of the most comprehensive address databases available for skip tracing. (Mitzner Dec., ¶ 7.) Of the one hundred fifty-four (154) Notice Packets that were skip traced, one hundred fifty-one (154) updated addresses were obtained and the Notice Packet was promptly re-mailed to those Class Members via first class mail. (Mitzner Dec., ¶ 7.) As of March 4, 2022, three (3) Notice Packets are considered undeliverable as an updated address could not be obtained via skip tracing. (Mitzner Dec., ¶ 8.) On February 25, 2022, discrepancies were discovered in the original Notice Packet due to the change in the gross settlement payment. Specifically, the Gross Settlement Amount was not updated at the end of the Notice to reflect the escalator increase and the website for viewing the court documents was not included in the Notice. Phoenix mailed a postcard with the corrections to the Class Members on March 1, 2022. (Mitzner Dec., ¶ 6, Ex. B.)

### B.    Request for Exclusion, Objections, and Disputes

The deadline for Class Members to submit an Opt-Out as provided in the

Notice was April 5, 2022. (Mitzner Dec., ¶ 10) As of March 4, 2022, Phoenix has received a total of five (5) timely Opt-Outs. (Mitzner Dec., ¶ 10.)

The deadline for Class Members to submit an Objection to the Settlement as provided in the Notice was April 5, 2022. (Mitzner Dec., ¶ 11) Phoenix received zero (0) Objections to the Settlement. (Mitzner Dec., ¶ 11.) Finally, Phoenix did not receive any disputes from Class Members. (Mitzner Dec., ¶ 12.)

### C.    Total Participating Class Members

Plaintiff's Counsel will file a declaration from the Settlement Administrator regarding the administration of the Class Notice, number of opt-outs, and objections, if any, by May 9, 2022.

## V.    SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    Legal Standards

Rule 23(e) of the Federal Rules of Civil Procedure provides that "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e). The requirements of Rule 23(e) set forth the procedures for approval of class action settlements. First, the court must direct notice in a reasonable manner to all Class Members who would be bound by the settlement. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(1). Class Members should be given the opportunity to opt-out of the settlement and to object to the settlement. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(4)-(5). A court may only approve a binding settlement after a hearing, and on finding that the settlement is fair, reasonable, and adequate. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(2).

A court must engage in a two-step process to approve a proposed class action settlement. First, the court must determine whether the proposed settlement deserves preliminary approval. (*National Rural Telecommunications Cooperative v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 525.) This step has already

been completed here, as the Court preliminarily approved the settlement on April
6, 2021. (*See* Order Granting Preliminary Approval of Class Action Settlement,
ECF Dkt. No. 61.)

Second, after notice is given to Class Members, a court must determine
whether final approval is warranted. (*National Rural Telecommunications
Cooperative*, *supra*, 221 F.R.D. at p. 525.) To grant final approval, the court must
find that the proposed settlement is fair, adequate, and reasonable. (*See Staton v.
Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 959 (citing *Hanlon*, *supra*, 150 F.3d at
p. 1026).) In making this determination, the court may consider any or all of the
following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense,
> complexity, and likely duration of further litigation; (3) the risk of
> maintaining class action status throughout the trial; (4) the
> amount offered in settlement; (5) the extent of discovery
> completed and the stage of the proceedings; (6) the experience
> and views of counsel; (7) the presence of a governmental
> participant; and (8) the reaction of the class members to the
> proposed settlement.

*Churchill Village, L.L.C.*, *supra*, 361 F.3d at p. 575; *Officers for Justice v. Civil
Service Com'n of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615,
625; *Hanlon*, *supra*, 150 F.3d at p. 1026. This list is not exhaustive, and "[t]he
relative degree of importance to be attached to any particular factor will depend
upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief
sought, and the unique facts and circumstances presented by each individual
case." *Officers for Justice*, *supra*, 688 F.2d at p. 625. Where a settlement is
reached prior to formal class certification, courts also look for signs of collusion
or other conflicts of interest. (*See In re Bluetooth Headset Products Liability
Litigation* (9th Cir. 2011) 654 F.3d 935, 946–47.)

Under recent amendments to the Federal Rules of Civil Procedure, district
courts must also consider a list of factors delineated in Rule 23(e)(2), which bear

similarities to the Ninth Circuit's longstanding factors and considerations:

> (2) Approval of the Proposal. If the proposal would bind Class Members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A) the class representatives and class counsel have adequately represented the class;
>>
>> (B) the proposal was negotiated at arm's length;
>>
>> (C) the relief provided for the class is adequate, taking into account:
>>
>>> (i) the costs, risks, and delay of trial and appeal;
>>>
>>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D) the proposal treats Class Members equitably relative to each other.

The Advisory Committee recognizes that federal "[c]ourts have generated lists of factors" to decide the fairness, reasonableness, and adequacy of a settlement, and that "each circuit has developed its own vocabulary for expressing these concerns." Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(2) Advisory Committee's Notes to 2018 Amendments. In recognizing these, the Advisory Committee explained that it did not intend to "displace any factor [used by federal courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id. As such, to the extent possible, the Court should apply the factors listed in Rule 23(e)(2) through the lens of the Ninth Circuit's factors and existing relevant precedent. The Court should also take heed of the Advisory Committee's warning not to let "[t]he sheer number of factors ... distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." (Id.)

Despite the importance of fairness, the Court must also be mindful of the

Ninth Circuit's policy favoring settlement, particularly in class actions. (*See, e.g.,
Officers for Justice*, *supra*, 688 F.2d at p. 625 ("[V]oluntary conciliation and
settlement are the preferred means of dispute resolution. This is especially true in
complex class action litigation").) While balancing all of these interests, the
Court's inquiry is ultimately limited "to the extent necessary to reach a reasoned
judgment that the agreement is not the product of fraud or overreaching by, or
collusion between, the negotiating parties." (*Ibid.*) "It is the settlement taken as a
whole, rather than the individual component parts, that must be examined for
overall fairness." (*Hanlon*, *supra*, 150 F.3d at p. 1026.) "Settlement is the
offspring of compromise; the question ... is not whether the final product could be
prettier, smarter or snazzier, but whether it is fair, adequate and free from
collusion." (*Id.* at p. 1027.)

### B.    Final Confirmation of Class Certification is Appropriate

The Court preliminarily certified the Class for settlement purposes under
Rule 23 of the Federal Rules of Civil Procedure, appointed Plaintiff as the
representative for the Class, and appointed Plaintiff's attorneys as Class Counsel.
(Dkt. No. 61.) The Court found, for purposes of settlement, that the Class meets
all of the requirements under Rule 23(a) and Rule 23(b)(3) to maintain this Action
as a class action. The deadline for opting out of, or objecting to, the Settlement
Agreement is April 5, 2022.

For these reasons, and for the reasons set forth in Plaintiff's Motion for
Preliminary Approval of Class Action Settlement (Dkt. No. 52), the Court should
confirm the certification of this action as a settlement class action and the
appointment of Plaintiff as the Class Representative.

**C.  Final Settlement Approval is Appropriate as the Settlement
Agreement is Fair, Reasonable, and Adequate**

**1.  The Settlement is the Product of Arms' Length
Negotiations**

As discussed more extensively in the Parties' Motion for Preliminary
Approval of Class Action Settlement (Dkt. No. 52), as well as in Plaintiff's
Motion for Attorney's Fees ("Fees Motion") concurrently filed herewith, (1) Class
Counsel are highly experienced in class action wage and hour litigation; (2)
Plaintiff and Defendant conducted significant discovery, investigation, and motion
practice that allowed Class Counsel to act intelligently in negotiating and
recommending the settlement; and, (3) the Parties arrived at the settlement
through arms-length bargaining involving competent and experienced counsel,
and only after a full day of mediation with an experienced mediator. (*See
Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 965 ("We put a
good deal of stock in the product of an arms-length, non-collusive, negotiated
resolution, and have never prescribed a particular formula by which that outcome
must be tested.") (citations omitted); *In re Zynga Inc. Securities Litigation* (N.D.
Cal., Oct. 27, 2015, No. 12-CV-04007-JSC) 2015 WL 6471171, at *9 (holding
that the parties' use of mediator and the fact that significant discovery had been
conducted "support the conclusion that the Plaintiff was appropriately informed in
negotiating a settlement"); *Harris v. Vector Marketing Corp.* (N.D. Cal., Apr. 29,
2011, No. C-08-5198 EMC) 2011 WL 1627973, at *8 (noting that the parties' use
of a mediator "suggests that the parties reached the settlement in a procedurally
sound manner and that it was not the result of collusion or bad faith by the parties
or counsel.")

Finally, none of the "subtle signs of collusion" that the Ninth Circuit has
warned of are present here. (*See e.g. In re Bluetooth Headset Products Liability
Litigation*, *supra*, 654 F.3d at p. 947.) Class Members will be receiving monetary

distribution commensurate with their pro rata share of the Gross Settlement
Amount, and based upon the number of Work Weeks they have worked for
Defendants. (Odenbreit Dec., Ex. A, section 3.21.) Further, Class Counsel will be
applying for a percentage of the common fund fee award in an amount not to
exceed one-third of the Gross Settlement Amount to compensate them for the
services they have rendered on behalf of the Settlement Class Members. (*See
generally*, Motion for Attorneys' Fees and Costs.) The award of attorneys' fees is
separate from the approval of the Settlement, and neither Plaintiff nor Class
Counsel may cancel or terminate the Settlement based on this Court's or any
appellate court's ruling with respect to attorneys' fees. Moreover, there is no
indication of a "clear sailing" arrangement, or an arrangement for unawarded fees
to revert to Defendants rather than the Class Members. (Odenbreit Dec., Ex. A,
section 1.20.) The Settlement is not a claims-made settlement. It is an all-in, non-
reversionary settlement. Upon the occurrence of the Effective Date, no
Defendants, Releasee, or any other person or entity who, or which, paid any
portion of the Settlement shall have any right to the return of the Gross Settlement
Amount or any portion thereof for any reason whatsoever. As such, this factor
weighs in favor of final approval.

### 2. The Costs and Risks of Further Litigation Favor Approval of the Settlement

The Court must "balance the continuing risks of litigation (including the
strengths and weaknesses of the Plaintiff's case), with the benefits afforded to
members of the Class, and the immediacy and certainty of a substantial recovery."
(*Velazquez v. International Marine and Industrial Applicators, LLC* (S.D. Cal.,
Feb. 9, 2018, No. 16CV494-MMA (NLS)) 2018 WL 828199, at *4.)

Plaintiff is convinced of the strengths of his claims. However, Defendants
are equally adamant about the strength of its defenses. Plaintiff's claims and
Defendants' defenses give rise to a number of critical, disputed factual and legal

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

issues that go to the core of Plaintiff's claims and theories of liability and, by extension, to Plaintiff's entitlement to recover damages and penalties, and/or the proper measure of damages.

As is set forth in greater detail in Plaintiff's Motion for Preliminary Approval, supplemental briefing and the Declarations filed in support thereof (Dkt. Nos. 52, 53-1 through 53-6), while this is a strong case for class certification and for maintaining class status through trial, there is a risk that Plaintiff and the Class would not prevail on the merits should this case proceed to trial. At the very least, litigating these issues would require additional costly and complicated discovery, summary judgment practice, and, in all likelihood, trial. Whether Plaintiff would prevail remains uncertain, and appeals would almost certainly follow any ruling by this Court.

By contrast, the Settlement provides excellent recoveries to class members now without that uncertainty and delay. In Class Counsel's extensive experience litigating similar cases, Class Counsel understands and appreciates the risks and uncertainties facing the claims of Plaintiff and the Class, which weigh in favor of settlement approval. Whatever the strength of the claims, Plaintiff nonetheless face numerous obstacles to recovery, including likely challenges to the use of representative testimony and expert witnesses to establish class-wide liability and aggregate damages, challenges to Plaintiff's methodology for calculating damages and penalties, and having to defeat Defendants' defenses. It is especially true here where Defendants deny liability, and when a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot v. Celtic Ins. Co.,* 2011 WL 1522385 at *5 (N.D. Cal. April 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also Mora v. Harley-Davidson Credit Corp.* (E.D. Cal., Jan. 3, 2014, No. 1:08-CV-01453-BAM) 2014 WL 29743, at *4 (granting final approval to settlement

agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.* (N.D. Cal., Apr. 26, 2013, No. 10-CV-02576 NC) 2013 WL 1789602, at *4 ("[E]ven with a strong case, litigation entails expense.")

Further, despite the suitability of this matter for class treatment, the litigation regarding class certification would also have been expensive and time-consuming. Assuming the Court certified a class action for trial, Defendants could have appealed from a class certification order, which might have delayed the proceedings considerably and been very expensive. Additionally, if this case had proceeded to trial, the time and expenses associated with trial preparation would have been considerable. A class action trial in this case would be manageable, but it would also be complex, expensive, and extremely time-consuming. Even if Plaintiff obtained a favorable verdict and judgment on her claims, Plaintiff and the Class would face additional expenses and delay if, as is likely, Defendants were to appeal. Taken together, these considerations support approval of the settlement.

### 3.       The Amount of the Settlement Favors Approval

The Court must weigh the risk to Plaintiff against the value of the Settlement. (*Officers for Justice*, *supra*, 688 F.2d at p. 625.) The Settlement provides for a $626,705.45 Gross Settlement Amount, and no less than $366,903.72 for the Net Settlement Amount once the Administration costs, litigation costs requested, attorneys' fees requested, enhancement award requested, and LWDA's portion of the PAGA allocation have been deducted. (Mitzner Dec., ¶ 13.) Class Counsel request attorney's fees of no more than one-third of the Gross Settlement Amount, or two hundred eight thousand nine hundred one dollars and eighty-two cents ($208,901.82). Class Counsel also seek reimbursement of thirteen thousand three hundred ninety-nine dollars and ninety-one cents ($13,399.91) in litigation expenses incurred by Class Counsel.

As stated in the Declaration of Katherine J. Odenbreit in support of the Motion for Preliminary Approval (Dkt. No. 53, ¶¶ 6-25), it is estimated that the

reasonable value for all claims is approximately two million one hundred eighty-two thousand nine hundred twenty-four dollars and fifty-one cent ($2,182,924.51). Given the increase in class size and workweeks, the adjusted estimated reasonable value would be approximately $2,706,826.39. The Gross Settlement Amount of six hundred twenty-six thousand seven hundred five dollars and forty-five cents ($626,705.45) still represents approximately 22% of the reasonable value of the case which was found by the Court at preliminary approval to be a fair and reasonable recovery. (DKT. 53 Odenbreit Dec., ¶ 23.) The Parties contemplated a potential increase in Class Members and to account for the potential increase and ensure this settlement was reasonable the Parties agreed to an Escalator Clause in the Settlement Agreement (Odenbreit Dec. Ex. A, ¶1.20) wherein the Gross Settlement Amount ("GSA") has increased to six hundred twenty-six thousand seven hundred five dollars and forty-five cents ($626,705.45) to account for the increase in class size.  Wherein the class size did increase from two thousand sixty-one (2,061) to two thousand five hundred sixty-one (2,561) Class Members. Wherein the number of work weeks did increase from nineteen thousand nine hundred forty-two (19,942) to twenty-six thousand thirty-seven (26,037). (Odenbreit Dec., ¶ 15, Ex. A, section 1.20.) Accordingly, based on the contemplated increase in class size and the corresponding increase in the Gross Settlement Value, Class Counsel maintains that this settlement is fair, adequate, and reasonable. (Odenbreit Dec., ¶ 15.)

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, *supra*, 688 F.2d at p. 624 (citation omitted). Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1242. Courts have routinely determined that class settlements, like the one reached here, are reasonable even where Plaintiff recovers only a portion of their total potential recovery. (*See e.g. Behrens v. Wometco Enterprises, Inc.* (S.D. Fla. 1988) 118 F.R.D. 534, 542 "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."]) Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even - a thousandth of a single percent of the potential recovery." (*Ibid.*; see also *City of Detroit v. Grinnell Corp.* (S.D.N.Y. 1972) 356 F.Supp. 1380, 1386; *Ma v. Covidien Holding, Inc.* (C.D. Cal., Jan. 31, 2014, No. SACV 12-02161-DOC) 2014 WL 360196, at *5 (finding a settlement worth 9.1% of the total value of the action "within the range of reasonableness"); *Balderas v. Massage Envy Franchising, LLC* (N.D. Cal., July 21, 2014, No. 12-CV-06327 NC) 2014 WL 3610945, at *5 (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial). In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See City of Detroit*, *supra*, 495 F.2d at p. 463.

Therefore, the six hundred twenty-six thousand seven hundred five dollars and forty-five cents ($626,705.45) Gross Settlement Amount is well within the range of reasonableness, and this factor cuts in favor of final approval.

### 4.     The Settlement Provides for Equal Treatment of Class Members

The settlement proposed by the Parties reflects no significant indication of preferential treatment. As described in the Proposed Notice:

The Claims Administrator will calculate each Settlement Class Member's pro-rata share of the Settlement as follows: The Claims Administrator will calculate the number of total Compensable Work Weeks for each Settlement Class Member. Work Weeks will be

calculated according to records and information provided by
Defendants. For employees eligible for a share under the California
Labor Code's Private Attorneys General Act of 2004 (Lab. Code, §
2698 *et seq.*) ("PAGA"), the Claims Administrator will also calculate
the employee's share of the PAGA Allocation based on records and
information provided by Defendants on eligible employees' Pay
Periods. Settlement Awards shall be subject to applicable withholding
taxes. Defendants' share of payroll taxes arising from the Settlement
Awards will not be deducted from the Gross Settlement Fund.

*See, e.g.*, *Altamirano v. Shaw Industries, Inc.* (N.D. Cal., July 24, 2015, No.
13-CV-00939-HSG) 2015 WL 4512372, at *8 (finding no preferential treatment
because the settlement "compensates class members in a manner generally
proportionate to the harm they suffered on account of [the] alleged misconduct").
As the settlement proposed by the Parties reflects no significant indication of
preferential treatment, this factor cuts in favor of final approval.

> **5.**    **The Absence of Any Class Member Objection to the
> Settlement Agreement Supports Final Approval**

Plaintiff will file a supplemental declaration by Phoenix's representative
following the administration of the Notice by May 9, 2022. To-date, Plaintiff is
unaware of any objections.  "[T]he absence of any objections to the Settlement
Agreement among Class Members supports final approval." *In re Aftermarket
Automotive Lighting Products Antitrust Litigation* (C.D. Cal., Jan. 10, 2014, No.
09 MDL 2007-GW(PJWX)) 2014 WL 12591624, at *3. Even in cases where
objections are made, it is recognized that a small number of objections indicates a
favorable class reaction. *See National Rural Telecommunications Cooperative*,
*supra*, 221 F.R.D. at p. 526 (holding that "in the absence of a large number of
objections to a proposed class action settlement, settlement actions are favorable
to the class members."); *Atlas v. Accredited Home Lenders Holding Co.* (S.D.
Cal., Nov. 4, 2009, No. 07-CV-00488-H (CAB)) 2009 WL 3698393, at *4
(recognizing that only two class members submitted objections to the plan of

allocation in deciding to approve the plan of allocation); *see also Mandujano v. Basic Vegetable Products, Inc.* (9th Cir. 1976) 541 F.2d 832, 837.

### 6.    Additional Rule 23(e) Factors

The judgment of experienced counsel regarding the settlement is entitled to great weight. (*Hanlon*, *supra*, 150 F.3d at p. 1026; *Boyd v. Bechtel Corp.* (N.D. Cal. 1979) 485 F.Supp. 610, 622; *Ellis v. Naval Air Rework Facility* (N.D. Cal. 1980) 87 F.R.D. 15, 18.) Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." (*Rodriguez*, *supra*, 563 F.3d at p. 967 (*quoting In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 378).) Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable. Plaintiff's Counsel and Defendants' counsel each have extensive experience in prosecuting and litigating class action wage and hour suits like this one.

Further, as discussed in the contemporaneously filed Motion for Enhancement Payment, Attorneys' Fees, and Reimbursement of Costs and Expenses, the proposed attorneys' fees of one-third or thirty-three and one-third percent (33.33%) of the Gross Settlement Amount to be reasonable in light of the risk involved in this litigation, the work performed by Class Counsel, and the fact that there were no objections to this amount. Moreover, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on a ruling regarding attorneys' fees. (Odenbreit Dec., Ex. A; *see also* Plaintiff's Fees Motion.) The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

## VI.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of the claims that meet the requirements of final approval pursuant to Rule 23, subdivision (e)

of the Federal Rules of Civil Procedure. The Parties thereby request that the Court (1) grant final approval of the Settlement, and (2) grant final class certification and class action designation of the Settlement.

Dated: March 4, 2022                          **MAHONEY LAW GROUP, APC**

                                    By:    */s/ Katherine J. Odenbreit*
                                           Katherine J. Odenbreit, Esq.
                                           Attorneys for Plaintiff Anita Trejo as
                                           an individual and on behalf of all
                                           similarly situated employees

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT